DCP:DGR
F. #2019R01687

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

JEFFREY SLOTHOWER,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. 2:21-cr-00602 (GRB)(ARL)
(T. 15, U.S.C., §§ 80b-6, 80b-14 and
80b-17; T. 18, U.S.C., §§ 982(a)(1),
982(a)(2), 982(b)(1), 1343,
1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 2 and
3551 et seq.; T. 21, U.S.C., § 853(p))

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    The Defendant

        1.    The defendant JEFFREY SLOTHOWER was a resident of Southampton, New York. SLOTHOWER was formerly an investment advisor and broker registered with the Securities and Exchange Commission (the "SEC").

II.    Relevant Individuals, Entities and Terms

        2.    Battery Private, Inc. ("Battery Private") was a financial advisory and investment company with an office in New York, New York. The defendant JEFFREY SLOTHOWER was the founder and sole owner of Battery Private.

        3.    Financial Institution-1 and Financial Institution-2, entities the identities of which are known to the Grand Jury, were federally chartered banks, the deposits of which were insured by the Federal Deposit Insurance Corporation. Financial Insitution-1 and Financial Institution-2 conducted business in several states, including New York.

4.      Victim-1 and Victim-2 (collectively, the "Victims"), individuals whose identities are known to the Grand Jury, were a married couple who, at times, were investment advisory clients of the defendant JEFFREY SLOTHOWER and who also invested money with SLOTHOWER through Battery Private.  Victim-1 and Victim-2 lived in California.

5.      A homeowner's association ("HOA") is a type of organization that governs some residential communities.  An HOA can require residents in the community to pay fees or assessments to, among other things, perform repairs and maintenance.

III.    The Fraudulent Scheme

6.      In or about and between January 2017 and February 2019, both dates being approximate and inclusive, the defendant JEFFREY SLOTHOWER engaged in a scheme to defraud the Victims through material misrepresentations and omissions relating to, among other things, how the Victims' money would be invested.

7.      In or about 2016, the defendant JEFFREY SLOTHOWER, who had previously served as a financial advisor to the Victims before starting his own investment advisory company, Battery Private, repeatedly contacted Victim-1 via telephone calls, emails and text messages to solicit investment business from Victim-1 for Battery Private.  Specifically, SLOTHOWER told Victim-1 that SLOTHOWER could earn Victim-1 a higher rate of return than Victim-1 was then earning on his investments, without any market risk.  Victim-1 initially declined to invest with SLOTHOWER or Battery Private.

8.      In or about August 2016, Victim-2 signed an investment advisory agreement with Battery Private.  Thereafter, the defendant JEFFREY SLOTHOWER provided investment advisory services to Victim-2.

9. In or about January 2017, the defendant JEFFREY SLOTHOWER again solicited Victim-1's investment business via telephone calls, emails and text messages. Victim-1 informed SLOTHOWER that he was seeking a bond-type investment with a steady rate of return, and SLOTHOWER subsequently told Victim-1, in sum and substance, that he would invest Victim-1's money into bonds backed by HOA fees (the "HOA Bonds"). SLOTHOWER informed Victim-1 that HOAs could use the money raised by the HOA Bonds to make repairs in their communities, and that the HOA Bonds would generate a return of eight percent per year, payable quarterly. Based on these representations, Victim-1 agreed to invest money with Battery Private and SLOTHOWER.

10. On or about January 23, 2017, the defendant JEFFREY SLOTHOWER sent Victim-1 an email with the subject line "Wire Instructions," which contained wiring instructions for Victim-1 to send his investment to Battery Private. That email also attached a document entitled "Cash Agreement." Among other things, that document detailed a rate of return for Victim-1's cash investment and claimed that Victim-1's investment would be held as "capital reserves" of Battery Private, stating:

> This will serve as an agreement that you will receive 8% simple interest payable at 2% per quarter on cash sent and held as capital reserves of Battery Private, Inc. beginning January 1, 2017 to January 1, 2018. The cash can be called at any time, but please allow a full quarters notice for Battery Private, Inc. to maintain their reported reserves.

Victim-1 never signed the "Cash Agreement." The email's wiring instructions directed Victim-1 to send his investment via wire transfer to a bank account at Financial Institution-1 in the name of Battery Private (the "First Battery Private Bank Account").

A. <u>Victim-1's January 2017 Investments</u>

11. In response to the defendant JEFFREY SLOTHOWER's representations about the HOA Bonds, and after receiving the "Cash Agreement," on or about and between January 25 and January 27, 2017, Victim-1 sent three wire transfers totaling approximately $546,727.94 to the First Battery Private Bank Account, which had an address in New York, New York. Specifically, on (i) January 25, 2017, Victim-1 sent a wire transfer of approximately $150,000 from a bank account with an address in Texas (the "First Victim-1 Bank Account") to the First Battery Private Bank Account; (ii) on January 27, 2017, Victim-1 sent a wire transfer of approximately $150,000 from a bank account with an address in California (the "Second Victim-1 Bank Account") to the First Battery Private Bank Account; and (iii) on January 27, 2017, Victim-1 sent a wire transfer of approximately $246,727.94 from a different bank account with an address in California (the "Third Victim-1 Bank Account") to the First Battery Private Bank Account.

12. The defendant JEFFREY SLOTHOWER did not invest the $546,727.94 he received from Victim-1 into the HOA Bonds as he had told Victim-1 he would nor did he hold those funds as "capital reserves" of Battery Private, as set forth in the Cash Agreement. Instead, SLOTHOWER misappropriated the money, including by, among other things: (i) transferring more than $70,000 to his personal bank account, funds which were then used to pay $10,000 to SLOTHOWER's wife, $1,000 to SLOTHOWER's mother, and to pay down the balance of a credit card in SLOTHOWER's name that had been used to purchase luxury clothing and jewelry; (ii) purchasing a luxury automobile for approximately $125,000; (iii) paying approximately $19,000 in fees to a private golf club on Long Island; (iv) paying off

approximately $13,432 in debt on his mother's car loan; and (v) purchasing real estate and securities in other companies.

13. In furtherance of the fraudulent scheme, the defendant JEFFREY SLOTHOWER caused Battery Private to make three payments purportedly representing quarterly distributions of the eight percent annual return that SLOTHOWER had promised Vicitm-1. Specifically, on or about April 6, 2017, July 20, 2017 and October 10, 2017, SLOTHOWER caused checks, each in the amount of $10,934.55, to be issued to Victim-1 from the First Battery Private Bank Account. The funds for the checks did not come from HOA Bonds.

B. Victim-2's December 2017 Investment

14. In or about late 2017, Victim-2, who was then an investment advisory client of the defendant JEFFREY SLOTHOWER, learned from Victim-1 about the HOA Bonds and the "reserve" account at Battery Private and that Vicitm-1 had purportedly received the payments that SLOTHOWER had promised pursuant to Victim-1's investment. Victim-2 then decided to invest the funds managed by SLOTHOWER and Battery Private into the same investment that Victim-1 believed he had made.

15. In or about November 2017, the defendant JEFFREY SLOTHOWER told Vicitm-1 that Victim-2's funds could not be transferred directly from the account that SLOTHOWER managed to the Battery Private "reserve" fund. Instead, SLOTHOWER told Victim-1 that Victim-2 would need to first send the money to her personal bank account and then send it to the First Battery Private Bank Account. Thereafter, in or about December 2017, Victim-2, who was then SLOTHOWER's investment advisory client, transferred the entirety of Victim-2's brokerage account, approximately $540,000, to Victim-2's personal bank account in

California. Victim-2 then caused approximately $540,208.36 to be sent via wire transfer from Victim-2's personal bank account in California to the First Battery Private Bank Account for the purpose of having it invested in the "reserve" fund.

16. The defendant JEFFREY SLOTHOWER did not keep Victim-2's investment in Battery Private's "capital reserves" or invest it in the HOA Bonds. Instead, SLOTHOWER misappropriated the funds, including by, among other things: (i) transferring approximately $76,000 to his personal bank account; and (ii) using approximately $33,599 to pay personal credit card bills.

17. In furtherance of the fraudulent scheme, the defendant JEFFREY SLOTHOWER caused Battery Private to make a payment to Victim-2 purportedly representing quarterly distributions of the eight percent annual return that SLOTHOWER had represented as returns from the HOA Bonds. Specifically, on or about June 10, 2018, SLOTHOWER caused a check in the amount of $10,804.17 to be issued to Victim-2 from a bank account owned by Battery Private at Financial Institution-2 (the "Second Battery Private Bank Account"). The funds for the check to Victim-2 came from two checks signed by SLOTHOWER.

    C.    <u>Victim-1's June 2018 Investment</u>

18. Based on the representations made by the defendant JEFFREY SLOTHOWER and the purported returns he had received on the HOA Bonds investment, on or about June 12, 2018, Victim-1 caused another $84,000 to be sent via wire transfer from a bank account with an address in Washington, D.C. to the Second Battery Private Bank Account before the purpose of having it invested in the HOA Bonds.

19. The defendant JEFFREY SLOTHOWER did not invest Victim-1's $84,000 in the HOA Bonds. Instead, SLOTHOWER misappropriated the funds, including by,

among other things: (i) writing a check for approximately $3,601.39 to Victim-2; (ii) paying approximately $11,622.87 to a private golf club on Long Island; and (iii) writing two checks to Victim-1, each for approximately $11,174.56.

  D. <u>The Defendant JEFFREY SLOTHOWER Stopped Making Payments</u>

    20. In or around November 2018, the defendant JEFFREY SLOTHOWER stopped making the promised quarterly payments to the Victims.

    21. On or about November 7, 2018, Victim-1 wrote to the defendant JEFFREY SLOTHOWER via email that the Victims had not "received [their] Quarterly distribution checks for Q3 2018." SLOTHOWER responded via email, "Ok I went through the process of stopping those and I will have them reissued. I will call/email when they read 'sent'. (These others read sent so not sure why they weren't received). Separately, I'd like to begin planning to have all principal returned after Q4 is concluded . . . [i]t's looking like the same interest couldn't be repeated in 2019, though I'm not sure yet."

    22. On or about November 30, 2018, Victim-1 demanded, via email, that the defendant JEFFREY SLOTHOWER return the Victims' investments and any earnings. SLOTHOWER declined to return the Victims' cash principal or earnings, and instead offered to give them an alternative asset. After Victim-1 declined to take the alternative asset as payment, on or about December 17, 2018, SLOTHOWER told the Victims via email that "the liquidated wire would be very tough in the short time period," that "[i]t takes up to a quarter to free and send" their investments, and "everything will be free after the 4th quarter, principal and all accrued interest for both" of the Victims.

23. On or about January 11, 2019, Victim-1 renewed his request for payment. defendant JEFFREY SLOTHOWER responded via email, "[e]verything, all principal and accrued interest will be sent by the end of this month but most likely before."

24. On or about January 30, 2019, Victim-1 again asked the defendant JEFFREY SLOTHOWER to return his investment and earnings. SLOTHOWER responded, via email, "I'm trying to get everything cleared out as early as Friday."

25. On or about February 28, 2019, the defendant JEFFREY SLOTHOWER told the Victims via email that "[t]he wires won't take much longer to be released out. Sorry for the delay. Everything is backed by a very large amount of assets and getting the liquidation to cash to be able to wire has just been really slow procedurally. I'm expecting it imminently . . . ."

26. Despite these representations, neither Victim-1 nor Victim-2 has received any additional payments from the defendant JEFFREY SLOTHOWER.

COUNT ONE
(Wire Fraud)

27. The allegations contained in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

28. In or about and between December 2016 and February 2019, both dates being approximate and inclusive, within the Eastern District of New York, the defendant JEFFREY SLOTHOWER, together with others, did knowingly and intentionally devise a scheme and artifice to defraud Victim-1 and Victim-2, and to obtain money and property from Victim-1 and Victim-2 by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice did transmit and cause to be transmitted by means of wire communication in interstate and foreign

commerce, writings, signs, signals, pictures and sounds, to wit: emails, text messages and telephonic communications between SLOTHOWER and the Victims and causing the initiation of wire transfers from the Victims.

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

## COUNT TWO
(Investment Advisor Fraud)

29. The allegations contained in paragraphs one through 26 are realleged and incorporated as if fully set forth in this paragraph.

30. In or about and between August 2016 and February 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JEFFREY SLOTHOWER, together with others, did knowingly and willfully use and cause to be used, the mails and means and instrumentalities of interstate commerce, directly and indirectly: (a) to employ one or more devices, schemes and artifices to defraud Battery Private's prospective and current clients, to wit: Victim-1 and Victim-2; (b) engage in one or more transactions, practices and courses of business which operated as a fraud and deceit upon Battery Private's prospective and current clients, to wit: Victim-1 and Victim-2; and (c) to engage in one or more acts, practices and courses of business which were fraudulent, deceptive and manipulative.

(Title 15, United States Code, Sections 80b-6, 80b-14 and 80b-17; Title 18, United States Code, Sections 2 and 3551 et seq.)

## COUNTS THREE THROUGH FIVE
(Money Laundering)

31. In or about the dates set forth in the table below, those dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JEFFREY SLOTHOWER, together with others, did knowingly and intentionally conduct one or

more financial transactions in and affecting interstate commerce, which transactions in fact involved the proceeds of specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1341, knowing that the property involved in such transactions represented the proceeds of some form of unlawful activity, with the intent to promote the carrying on of the specified unlawful activity, as set forth below:

| COUNT | APPROXIMATE DATE | FINANCIAL TRANSACTION |
|---|---|---|
| THREE | June 10, 2018 | Issued check number VV007 in the amount of $3,601.39 drawn on the Second Battery Private Bank Account made payable to Victim-2 |
| FOUR | June 10, 2018 | Issued check number VV009 in the amount of $11,174.56 drawn on the Second Battery Private Bank Account made payable to Victim-1 |
| FIVE | June 10, 2018 | Issued check number VV010 in the amount of $11,174.56 drawn on the Second Battery Private Bank Account and made payable to Victim-1 |

(Title 18, United States Code, Sections 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 2 and 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNT ONE

32. The United States hereby gives notice to the defendant that, upon his conviction of the offense charged in Count One, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(2), which requires any person convicted of such offense, to forfeit any property, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense.

33. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)  has been placed beyond the jurisdiction of the court;

    (d)  has been substantially diminished in value; or

    (e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

  (Title 18, United States Code, Sections 982(a)(2) and 982(b)(1); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS THREE THROUGH FIVE

  34.  The United States hereby gives notice to the defendant that, upon his conviction of any of the offenses charged in Counts Three through Five, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offenses to forfeit any property, real or personal, involved in such offenses, or any property traceable to such property.

  35.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a)  cannot be located upon the exercise of due diligence;

    (b)  has been transferred or sold to, or deposited with, a third party;

    (c)  has been placed beyond the jurisdiction of the court;

    (d)  has been substantially diminished in value; or

    (e)  has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

_____
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F.#: 2019R01687
FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

vs.

JEFFREY SLOTHOWER,

Defendant.

# INDICTMENT

(T. 15, U.S.C., §§ 80b-6, 80b-14 and 80b-17; T. 18, U.S.C., §§ 982(a)(2), 982(a)(1), 982(b)(1), 1343, 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p))

*A true bill.*

_____ *Valarie Bickung* _____

*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ A.D. 20 _____

_____

*Clerk*

*Bail, $* _____

_____

*Drew G. Rolle*
*Assistant U.S. Attorney (718) 254-7000*